478 So.2d 652 (1985)
Shelva Maria FUSSELL, Plaintiff-Appellant,
v.
LOUISIANA BUSINESS COLLEGE OF MONROE, INC., Defendant-Appellee.
No. 17324-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1985.
Daisy M. Jefferson, Monroe, for plaintiff-appellant.
Paul Henry Kidd, Sr., Brenda R. Irving, Monroe, for defendant-appellee.
Before HALL, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
Plaintiff, Shelva Maria Fussell, appeals from a trial court judgment granting a motion by defendant, Louisiana Business College of Monroe, Inc. for involuntary dismissal made at the close of plaintiff's case. We reverse the trial court ruling.

FACTS
On February 7, 1983, the parties entered into a contract whereby defendant was to provide plaintiff with educational courses to enable her to become a legal secretary in exchange for which plaintiff agreed to pay tuition in excess of $3,000. Plaintiff alleged that on May 26, 1983, defendant breached the contract by wrongfully suspending her from class attendance. Plaintiff *653 filed suit claiming damages of $15,400 for delay in completing her education and for mental anguish.
Testimony at trial indicates that plaintiff and other students developed some concerns regarding overcharging and misapplication of funds by the school. Plaintiff contended the faculty at the school indicated the tuition fee included books required for courses when, in fact, this was not the case. Several students, including plaintiff, petitioned the district attorney to look into the matter. Plaintiff, along with numerous other students, was quoted in a newspaper article dealing with the controversy. A meeting to discuss the matter was held between members of the faculty and some of the students, which plaintiff attended. This meeting was tape recorded by plaintiff. At the trial, defendant's counsel questioned plaintiff about an incident in which the tape of the meeting was allegedly played to a classroom full of students. Plaintiff and another witness testified there were very few students in the room when the incident occurred, and that she accidently turned on the tape player, immediately turned it off and the tape recording of the meeting was not actually played. The school determined plaintiff was a disruptive influence and suspended her for one week and refused to readmit her unless she signed a document admitting she had been a disruptive influence, stating her suspension was justified, agreeing to a future suspension if she again became a disruptive influence, and agreeing that the decision as to whether her conduct was disruptive would be left to the sole discretion of the school administrator. Plaintiff refused to sign the document.
At trial, plaintiff introduced her certificate of enrollment as evidence of the contract between the parties. This document, dated February 4, 1983, and signed by plaintiff and a representative of the school, Marie Entrican, provides that in consideration of acceptance by defendant for training as a legal secretary, plaintiff is obligated to defendant in the amount of $3650. The document also provides that plaintiff has received a copy of the college catalog containing rules of operation and conduct. The college catalog contains the following language concerning rules and regulations:
Each student is considered to be an adult, capable of giving consideration and courtesy to fellow students, following instructions, and demonstrating proper respect toward faculty. Students are expected to dress as future employers would require, in dresses or suits appropriate for business. The school may require withdrawal of any student whose attitude or conduct is not in accordance with school standards. No specific violation need be assigned. Each student receives a Student Rules and Regulations Handbook the day he/she starts classes. This book states the policies of conduct that are expected of the student.
The Student Rules and Regulations Handbook was not introduced into evidence at the trial nor is there anything in the record indicating what policies of conduct are required of students.
In addition to the document evidencing the contract between the parties, plaintiff introduced the suspension notice from the school effective May 26, 1983 indicating plaintiff had been "a disruptive influence as per student complaints," as well as the unsigned readmission agreement requiring plaintiff to admit that she had been a disruptive influence. Testimony was also presented on behalf of plaintiff by several students and teachers, indicating plaintiff was not a disruptive influence, but was a good student, often helping classmates who were experiencing difficulty with course work.
Two teachers from the school, Martha Dement and Sue Anderson Avery, testified that plaintiff was not a disruptive influence. Ms. Dement testified that complaints about the school were widespread among the students. It was Ms. Dements' husband who drew up the petition to the local district attorney requesting an investigation as to how government grant money was being handled by the school. The petition *654 presented to the district attorney was signed by 21 of the school's students.

TRIAL COURT JUDGMENT
Following the close of plaintiff's case, defendant moved for and was granted an involuntary dismissal. In oral reasons, the court cited the school's catalog which states that the school may require withdrawal of students whose attitude or conduct is not in accordance with school standards and provides that withdrawal can be required without assigning specific reasons. The court found that plaintiff was involved in a disruptive situation in the school and that plaintiff failed to prove a breach of contract.

ASSIGNMENT OF ERROR
Plaintiff filed a devolutive appeal urging the trial court erred in granting defendant's motion for involuntary dismissal. LSA-C.C.P. Art. 1672(B) provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the grounds that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
The jurisprudence holds that in a trial before a judge alone, the plaintiff must establish his case by a preponderance of the evidence. If he fails to do so, the granting of a motion for involuntary dismissal is proper. In order to prove a case by a preponderance of the evidence, all the evidence when taken as a whole must show the fact or cause to be proved is more probable than not. Sevin v. Shape Spa for Health and Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir.1980); Preyan v. United States Fidelity and Guaranty Company, 408 So.2d 1162 (La.App. 4th Cir.1981); Standard Machine and Equipment Company v. Southern Pacific Transportation Company, 410 So.2d 842 (La.App. 3rd Cir. 1982), writ denied 414 So.2d 377 (La.1982); Caldwell v. Texas Industries, Inc., 441 So.2d 472 (La.App. 2d Cir.1983). Therefore the proper inquiry in the present case, is whether the plaintiff's evidence establishes more probably than not a breach of contract by the defendant.
The existence of a contractual obligation requires parties legally capable of contracting, consent legally given, a certain object which forms the matter of the agreement, and lawful purpose. LSA-C.C. Art. 1779.[1] Agreements lawfully entered into become the law between the parties and cannot be revoked unless by mutual consent of the parties or by operation of law. LSA-C.C. Art. 1901. Whoever violates a contract is liable for damages. LSA-C.C. Art. 1930.
In the present case, plaintiff's evidence establishes a lawful contract whereby defendant was to train plaintiff as a legal secretary in exchange for which plaintiff was to pay tuition. Defendant then barred plaintiff from attending the school, refusing her the training defendant was obligated to provide under the contract. This constitutes a breach of the agreement between the parties.
Plaintiff has carried her burden of establishing the existence of a contract and a breach of that contract by the defendant. We next consider which party bears the burden of proving that the breach was justified. Put another way, we must consider who bears the burden of proof on the issue of whether plaintiff's enrollment as a student was properly terminated by the school.
It is well-settled that the plaintiff has the initial burden of establishing a prima facie case. When this has been done the burden *655 shifts to the defendant to rebut the evidence offered by plaintiff or establish a defense. Edelman Systems, Inc. v. Capitol GMC, Inc., 345 So.2d 99, writ denied 347 So.2d 250 (La.App. 1st Cir.1977); Greenup v. Barney, 315 So.2d 910 (La. App. 4th Cir.1975); Audrey Apartments v. Kornegay, 255 So.2d 792 (La.App. 4th Cir. 1971); Tolar v. K & G Contractors, 214 So.2d 176 (La.App. 4th Cir.1968).
In the present case, plaintiff's petition alleged that she was wrongfully suspended and defendant denied this allegation in its answer. This created a genuine issue and defendant bears the burden of showing the suspension was justified.
The plaintiff made a prima facie case of breach of contract by the defendant by showing that her status as a student at the school was terminated. It was then incumbent upon the defendant to show by competent evidence that the breach was that of plaintiff, rather than its own, and to show that the plaintiff's dismissal was justified. We do not believe the burden of proof was on plaintiff to affirmatively prove that all her actions were justified, but, on the contrary, the burden was upon defendant to prove that it was plaintiff who acted in such a way as to breach the contract.
The rules and regulations in the catalog referred to by the trial court appear to deal with general comportment and generally accepted standards of behavior. Specifically, the evidence offered relative to plaintiff's activities in light of the requirements of the school catalog do not show a violation. The catalog provides that each student is considered to be an adult capable of giving consideration and courtesy to fellow students. The evidence clearly showed that plaintiff conducted herself properly and was well-liked by her fellow students, was cooperative with them and, as previously mentioned, she even provided assistance to other students who were having difficulty with their studies. The catalog also requires students to follow instructions and to demonstrate proper respect toward the faculty. Several students testified that plaintiff conducted herself properly at school and the two faculty members who testified described plaintiff as a good student and one who was an asset to the school. The catalog also requires the students to dress properly; there is no indication that plaintiff did not comply with this requirement.
The only possible cause for the breach of the educational contract in this case is the requirement that "the school may require withdrawal of any student whose attitude or conduct is not in accordance with school standards."
The school standards are not defined, nor was any evidence presented as to what those standards might be in the context of this litigation. During the course of plaintiff's case, it was shown that she signed a petition to the district attorney and that she, along with numerous other students, answered questions by a newspaper reporter who then quoted the students in his paper. However, there is nothing in the record to indicate that plaintiff was a moving party in the controversy between the students and the school nor is there any evidence that she affirmatively sought to bring the controversy to public attention.
The petition to the district attorney was prepared by the husband of one of the faculty members. The signing of the petition was at least tacitly approved and encouraged by the faculty member who caused the petition to be prepared and who returned it to the school for the signatures of the students. Apparently, some members of the faculty were as concerned as some of the students about the financial operation of the school. The evidence does not show that plaintiff was the cause of the dissention at the school.
Defendant did not carry its burden of proof before the motion for involuntary dismissal was granted at the close of plaintiff's case.
For the reasons stated above, we find plaintiff established a breach of the contract between plaintiff and defendant by a preponderance of the evidence, and the trial court ruling granting defendant's *656 motion for involuntary dismissal was in error. Accordingly, we reverse the trial court judgment sustaining the motion for involuntary dismissal. That motion is hereby denied and this case is remanded to the trial court for further proceedings and the presentation of additional evidence, if any, in accordance with law. Costs of this appeal are assessed to defendant, Louisiana Business College of Monroe, Inc..
REVERSED AND REMANDED.
NOTES
[1] This case was decided by the trial court while C.C. Arts. 1779, 1901 and 1930 (Louisiana Civil Code of 1870) were in effect and before the effective date of the Civil Code revision dealing with Obligations contained in Act 331 of 1984 effective January 1, 1985.